**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| *In re: Furniture Mart, USA, Inc.* *Data Breach Litigation* | ) ) ) ) ) | Case No. 4:25-cv-04018-RAL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Christine Logan, Gabriel Hilmar, Brody Schaffer, and Austin Hinkle, individually and on behalf of all others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class,[1] preliminarily approve the proposed Settlement, and approve the Notices, Notice Plan, Claim Form, and claims process.

## I. INTRODUCTION

In January 2025, Defendant Furniture Mart, USA, Inc. ("Defendant" or "FMUSA"), announced a Data Breach impacting the personally identifying information ("PII" or "Private Information"), including names and Social Security numbers, of numerous individuals. *See* Joint Declaration of Class Counsel ("Decl.") ¶ 2, attached as Exhibit 2. As a result of the Data Breach, this Lawsuit was initiated in connection with Defendant's alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id*. ¶ 3. Defendant denies all liability and wrongdoing. *Id*. ¶ 3; Agreement § III.

After arm's-length negotiations spanning several months, the Parties reached a Settlement that is fair, adequate, and reasonable. Decl. ¶¶ 5–7, 27–30; Agreement § IV.15.2. The Settlement

[1] All capitalized terms herein shall have the same meanings as those defined in Section IV of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached hereto as Exhibit 1.

Agreement addresses payments for benefits to Settlement Class Members, Cost of Claims Administration, attorneys' fees and litigation expenses as awarded by the Court, and Service Award payments approved by the Court. Decl. ¶¶ 8–10, 13; Agreement §§ IV.3.1–3.6, 11.3, 11.4. Additionally, Defendant has agreed to provide a period of credit monitoring for Settlement Class Members who submit valid claims. Decl. ¶ 10; Agreement § IV.3.3. The Parties negotiated Plaintiffs' Service Award and Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses separately, and those payments will be addressed in a separate motion. Decl. ¶¶ 13–15; Agreement §§ IV.3.5, 11.3, 11.4. Plaintiffs believe the Settlement is favorable to the Settlement Class. Decl. ¶¶ 29, 30, 33, 34.

## II. BACKGROUND AND PROCEDURAL HISTORY

Defendant is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota. Decl. ¶ 2. In the course of operating its business, Defendant collected certain sensitive, personal, and Private Information such as names, Social Security numbers and dates of birth from certain individuals, including Defendant's employees. *Id.* In January 2025, Defendant began sending notice letters to individuals advising them that their Private Information had been potentially compromised in the Data Breach. *Id.*

On April 7, 2025, Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") in the United States District Court of the District of South Dakota, alleging: (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; and (5) invasion of privacy, as well as seeking declaratory and injunctive relief. [DE # 13].

The Parties met and conferred on several occasions to discuss the merits of the claims, conducted informal discovery, and on November 17, 2025, the Parties attended mediation before Hon. David E. Jones (Ret.). Decl. ¶¶ 4–5. Through these efforts, the parties were able to reach an

agreement in principle on the material terms of a proposed class action settlement. Decl. ¶¶ 4–5. The agreement was reached through arms'-length negotiation and advocacy by counsel on behalf of the Parties, aided by proposed Class Counsel's extensive experience with complex litigation and in particular data breach cases. *Id.* ¶ 5.

On November 17, 2025, the Parties signed a Confidential Settlement Term Sheet in which they agreed to certain principle terms for purposes of reaching a settlement in this case. Over the following weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. Decl. ¶ 6. The Settlement Agreement was finalized on or about April 27, 2026. *See* Agreement. It is proposed Class Counsel's opinion that the Agreement presents a favorable result for the Settlement Class. Decl. ¶¶ 5, 6, 37.

## III. SUMMARY OF SETTLEMENT

### A. Settlement Class

The Settlement Class has approximately 10,684 members and is defined as follows:

> All individuals residing in the United States whose Personal Information was potentially compromised in the Data Breach.

Agreement § IV.1.9, 1.34. The Settlement Class specifically excludes (i) Defendant and any of its parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; (iv) the attorneys representing the Parties in the Lawsuit; (v) all judges assigned to hear any aspect of the Lawsuit, as well as their immediate family members; and (vi) any person found by a court of competent jurisdiction to be guilty under criminal

law of initiating, causing, aiding or abetting the potential Data Breach, or who pleads *nolo contendere* to any such charge. *Id*.

## B. Settlement Consideration

### 1. *Benefits and Cash Payments*

The Settlement addresses payments for benefits to Settlement Class Members, Costs of Claims Administration, attorneys' fees and litigation expenses as awarded by the Court, and Service Award payments approved by the Court. Agreement §§ IV.3.1–3.6, 11.3, 11.4. The Settlement Class Members may claim one or more of a variety of awards intended to address the claims raised by Plaintiffs. Agreement §§ IV.3.1–3.6.

First, Settlement Class Members may claim compensation for Documented Losses, which includes up to a total of $4,500.00 per person for unreimbursed losses upon submission of a claim and supporting documentation. *Id*. § IV.3.1(a). Documented Losses include, but are not limited to, (i) unreimbursed losses relating to fraud or identity theft; (ii) unreimbursed credit monitoring costs that were incurred on or after the date of the Data Breach through the date of claim submission; and (iii) unreimbursed bank or credit card fees, long distance phone charges, postage, or gasoline for local travel; and (iv) unreimbursed interest and fees on payday loans taken as a result of the Data Breach. *Id*. Settlement Class Members may make claims for any documented out-of-pocket losses reasonably related to the Data Breach or to mitigating the effects of the Data Breach, to be determined at the discretion of the Claims Administrator. *Id.*

Second, Settlement Class Members who spent time remedying issues related to the Data Breach may claim reimbursement for up to four (4) hours of Lost Time at a rate of $25.00 per hour with an attestation that they spent the claimed time responding to issues raised by the Data Breach. Claims made for time spent will be subject to and be applied against the $4,500.00 individual cap

for Documented Losses. *Id*. § IV.3.1(b). Qualifying time spent may include, without limitation, (i) changing passwords on potentially impacted accounts; (ii) monitoring for or investigating suspicious activity on potentially impacted medical, financial, or other accounts; (iii) contacting a medical provider or financial institution to discuss suspicious activity; (iv) signing up for identity theft or fraud monitoring; or (v) researching information about the Data Breach, its impact, or how to protect themselves from harm. *Id*.

As a mutually-exclusive alternative to Documented Losses and Lost Time, a Settlement Class Member may request an Alternative Cash Payment of $75.00. *Id*. § IV.3.2.

Finally, all Settlement Class Members are eligible to enroll in three (3) years of credit monitoring services through one credit bureau, upon submission of a Valid Claim. *Id*. § IV.3.2. Settlement Class Members who submit a Valid Claim for Credit Monitoring will receive an activation code, as provided for in the Agreement. *Id*.

The Parties negotiated Plaintiffs' Service Award and an award of Attorneys' Fees and Costs separately from the benefits and cash payments described above. *Id*. § IV.11.2; Decl. ¶¶ 12, 14.

**2.** ***Releases*** – Each Settlement Class Member, including the Representative Plaintiffs, shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims. *Id*. § IV.10.1. Defendant shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, the Representative Plaintiffs, each and all of the Settlement Class Members, and Class Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Lawsuit or the Released Claims, except for enforcement of the Settlement Agreement. *Id*. § IV.10.2. Settlement Class members who opt-out of the

Settlement prior to the Opt-Out Date do not release their claims and will not obtain any benefits, including any Settlement Class Member Benefit, under the Settlement. *Id.* § IV.

**3. *The Notice Plan, Claim Process, Opt-Outs, and Objections***

***Costs of Claims Administration***– Defendant shall be responsible for all costs related to settlement administration, notice distribution and claims process, including costs of the Notice Plan and claims process. *Id.* § IV.3.4, 5.1, 7.11.

***Claims Administrator*** – The Parties have agreed to use Epiq Class Action and Claims Solutions, Inc, ("Epiq") as the Claims Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* § IV.1.4; Decl. ¶ 15.

***Notice Plan*** – Within seven (7) days of the entry of the Preliminary Approval Order, Defendant shall provide the Claims Administrator with the names, email addresses and mailing addresses of the Settlement Class Members known to it. *Id.* § IV.7.3. Within thirty (30) days after the entry of the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class in accordance with this Notice Plan and subject to the requirements of this Agreement and the Preliminary Approval Order. *Id.* § IV.7.4. Notice will be provided to Settlement Class Members via e-mail, unless an e-mail address is unknown or undeliverable, in which case Notice shall be sent via U.S. mail. *Id.* § IV.7.5, Ex. B. If any mailed Notice is returned by the Postal Service as undeliverable, the Claims Administrator shall remail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail, or, where the undeliverable mailed Notice is returned without a forwarding address, the Claims Administrator shall make reasonable efforts to ascertain the correct address of the Settlement Class Member whose Notice was returned as undeliverable and remail the Notice. *Id.* § IV.7.6.

Short Form Notice shall include a brief, one-page summary of the Settlement that highlights key information about the Lawsuit, the Settlement Agreement, and Settlement Class Members' options, and shall include the Settlement Website address and the fact that the Long Form Notice and a Claim Form are available through the Settlement Website. *Id*. § IV.1.37.

***Claims Process*** – The claims process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim as required, submit Claims, and decide whether to opt-out or object. Decl. ¶ 16. Claim Forms are due to the Settlement Administrator by the Claims Deadline, ninety (90) days from the date Notice is sent to Settlement Class Members. Agreement §§ IV.1.5, 6.2. The Claim Form is in plain language for easy completion. Decl. ¶ 18. The Settlement Administrator will review the Claim Forms for completeness and validity. Agreement § IV.6.3. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim. *Id*. § IV.6.4.

***Opt-outs and Objections*** – The opt-out and objection deadlines are sixty (60) days after the Notice Commencement Date, which provides sufficient time to access and review the Settlement documents, including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards. *Id*. §§ IV.1.23, 1.24.

***4. Service Awards, Attorneys' Fees and Costs***

***Service Awards*** – The Agreement calls for a reasonable Service Award for the Representative Plaintiffs of $2,500.00 each, for a total of $10,000.00, meant to compensate them for their efforts on the Settlement Class's behalf, including serving as named Plaintiffs, assisting in the Lawsuit's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Agreement § IV.11.4; Decl. ¶¶ 13, 45.

***Attorneys' Fees and Costs*** – After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs separate from the total of Valid Claims. Agreement § IV.11.1.; Decl. ¶¶ 12, 14. Class Counsel intends to seek an attorneys' fees and costs award not to exceed $285,000.00. *Id*. § IV.11.3; Decl. ¶ 15. The Notices advise the Settlement Class of these intended requests and further information on how to object. *Id.*, Exs. A, B; Decl. ¶ 14. Class Counsel will file an Application for Attorneys' Fees, and Costs, as well as Service Fees no later than fourteen (14) days prior to the deadlines for a Settlement Class Member to opt out of or object to the Settlement. *Id*. § IV.11.5.

## IV. LEGAL AUTHORITY

Before the Settlement can be finally approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be expensive, so courts will generally first conduct a preliminary fairness review. *See Newberg on Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth below.

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arm's-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018).

"A settlement agreement is 'presumptively valid.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 506 (8th Cir. 2015) (quoting *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab.*

*Litig.,* 716 F.3d 1057, 1063 (8th Cir.2013)). The decision to approve or disapprove of a class settlement "is committed to the sound discretion of the trial judge." *Id*.

The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

To determine whether a settlement is fair, reasonable and adequate, Courts must also consider the following "*Van Horn* factors": "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall*, 787 F.3d at 506 (citing *In re Uponor,* 716 F.3d at 1063 (quoting *Van Horn,* 840 F.2d at 607)). Of these, the most important consideration is the "balancing of the strength of the plaintiff's case against the terms of the settlement." *Id*.

At preliminary approval stage, the standard for what is "fair, reasonable, and adequate" is less demanding than at the final approval stage, and focuses primarily "on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023-RAL, 2016 WL 96156, at *6 (D.S.D. Jan. 8, 2016) (citing William B. Rubenstein, *Newberg on Class Actions* § 13: 13 (5th ed. 2011)). Key factors for assessing the procedural adequacy of a settlement include "the character of the settlement negotiations and the absence of collusion." *Id*.

Here, the foregoing Rule 23 and *Van Horn* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the settlement.

## V. LEGAL DISCUSSION

### A. The Court Should Certify the Proposed Class for Settlement Purposes.

Before assessing the parties' Settlement Agreement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632. Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D.

Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015). This case is no different.

***Numerosity.*** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Here, the numerosity requirement is easily met. Defendant represents that the Settlement Class consists of approximately 10,684 members. Agreement § IV.1.9. This number of individuals would inherently make joinder of all members impractical. Judicial economy would be well-served by certification.

***Commonality.*** Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). Even a single common question will suffice to meet the requirements of Rule 23(a)(2). *Heldt*, 2016 WL 96156, at *8. Moreover, commonality "does not require an identical factual scenario among each proposed class member." *Oglala Sioux Tribe v. Van Hunnik*, No. CIV. 13-5020-JLV, 2014 WL 317693, at *4 (D.S.D. Jan. 28, 2014)

The commonality requirement is easily satisfied here. All Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Personal Information. Thus, common questions include, *inter alia*, whether Defendant engaged in the wrongful conduct alleged; whether Settlement Class Members' Personal Information was compromised in the Data Breach; whether Defendant owed a duty to Plaintiffs

and Settlement Class Members; whether Defendant breached its duties; whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Data Breach; and whether Defendant committed the common law and statutory violations alleged in the Complaint. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information."); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2024 WL 1446468, at *7 (W.D. Ky. Apr. 3, 2024) (commonality requirement met at the preliminary approval stage where the class members' injuries all arose from the defendant's "failure to maintain adequate data security and to secure its employees' PII" so that "the common issue at trial would be the sufficiency of [the defendant's] data security practices and its failure to secure its employees' PII"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig*., No. 16- MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

***Typicality.*** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Heldt*, 2016 WL 96156, at *8. "This requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Id*. (quoting *Paxton v. Union Nat. Bank,* 688 F.2d 552, 561–62 (8th Cir.1982)). This element is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Kinney v. Siouxland Urology Assocs. P.C.*, No. CIV. 09-4051-KES, 2011 WL 796237, at *4 (D.S.D. Feb. 28, 2011)

Plaintiffs' claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Plaintiffs had Personal Information that was stored on Defendant's systems that was compromised in the Data Breach, so Plaintiffs suffered the same injury, were harmed by the same inadequate data security, and seek to assert the same underlying claims as the rest of the Settlement Class.

***Adequacy of Representation.*** The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 620. This analysis focuses on two issues: ""(1) [whether] the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Heldt*, 2016 WL 96156, at *9.

Plaintiffs adequately represent the Settlement Class, as they have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Decl. ¶¶ 4–6, 37, 46. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See id* ¶¶ 5, 7, 20–36, Exs. 1, 2, 3, 4.

***Predominance and Superiority.*** Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement asks whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "At the core of Rule 23(b)(3)'s predominance requirement is the

issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Heldt*, 2016 WL 96156, at *11 (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it requires that common questions predominate over any questions affecting only individual class members. *Id.* "[A] common question is defined as 'capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d at 397 (quoting *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant owed a duty to Plaintiffs and Settlement Class Members, whether Defendant breached its duty, and whether Defendant unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Data Breach. These issues are subject to "classwide resolution." Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases).

Like many other data breach cases, the Settlement Class in this case meets the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits.

*See e.g.*, *Bowen*, 2024 WL 1446468, at *7 (data breach case finding that a "class action lawsuit is . . . a superior method of fairly and efficiently adjudicating this case"); *See also In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same).

With respect to superiority, Rule 23(b)(3) identifies the following factors, each of which weighs in favor of finding superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Member's claim is much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. *See Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 219 (D.R.I. 2021), *amended*, No. CV 16-046 WES, 2024 WL 6881816 (D.R.I. May 23, 2024) ("The Court is mindful that '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"); *See also Bowen*, 2024 WL 1446468, at *7 (citing *Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("The 'most compelling rationale for finding

superiority in a class action' is the existence of a 'negative value suit.' A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery.")). It is also desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). With 10,684 class members, a class action would be superior to individual adjudication.

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

## B. The Settlement Terms are Fair, Adequate, and Reasonable.

The factors identified by Rule 23(e)(2) and the *Van Horn* case, *supra*, all weigh in favor of granting Preliminary Approval to allow Notice to issue to the Settlement Class.

### 1. *Representative Plaintiffs and Class Counsel have Adequately Represented the Settlement Class. (Fed. R. Civ. P. 23(e)(2)(A)).*

Here, the Representative Plaintiffs and Class Counsel have adequately represented the class. The Settlement Class Members are all potentially affected by the same Data Breach as the Representative Plaintiffs, and thus the Representative Plaintiffs have common interests with the Settlement Class. Moreover, the Representative Plaintiffs have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Lawsuit, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Decl. ¶ 45.

Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. Decl. ¶¶ 4–5. As such, Federal Rule of Civil Procedure 23(e)(2)(A) supports Preliminary Approval.

**2. *The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).***

Here, the Agreement is clearly the product of good-faith arm's-length negotiations and there is no evidence of fraud or collusion. After an exchange of information related to liability and damages and rigorous negotiations that accounted for the strengths and weaknesses of the Parties' respective positions, the Parties negotiated a fair and reasonable settlement. Decl. ¶¶ 4–6, 37–39. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *ld.* ¶ 6. There has been no fraud or collusion, and the Attorneys' Fees and Costs and Service Awards were negotiated separately. Decl. ¶ 7, 26, 27; Agreement § IV.11.2.

Accordingly, the reasonableness of the Settlement in this case is supported by the primary considerations of "the character of the settlement negotiations and the absence of collusion." *Heldt*, 2016 WL 96156, at *6. Moreover, the proposed Settlement does not favor any Settlement Class member over any other. Decl. ¶ 8. Therefore, Federal Rule of Civil Procedure 23(e)(2)(B) is satisfied and weighs in favor of approval.

**3. *The Agreement provides substantial relief to the Settlement Class, considering the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).***

Rule 23(e)(2)(C) involves similar considerations to two *Van Horn* factors—the merits of the plaintiff's case weighed against the terms of the settlement and the complexity and expense of further litigation. Rule 23(e)(2)(C) and these *Van Horn* factors weigh heavily in favor of granting Preliminary Approval

The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Breach, while avoiding substantial litigation costs. Specifically, all Settlement Class Members may claim up to three years of credit monitoring.

Agreement § IV.3.2. In addition, Settlement Class Members may claim compensation for certain Documented Losses as well as Lost Time at a rate of $25.00 per hour, for a combined total of up to $4,500.00 per Settlement Class Member. Agreement §§ IV.3.1(a), (b). These benefits are consistent with, and in fact exceed, other approved settlements. Decl. ¶ 11. In addition, service awards and attorneys' fees were negotiated separately from the total of Valid Claims. Agreement § IV.11.2; Decl. ¶ 12.

The information necessary to evaluate the Settlement has been obtained through public sources as well as through informal discovery. Decl. ¶ 4-5, 37. There is no dispute that a Data Breach occurred, that certain types of unencrypted Personal Information were accessed and exfiltrated, and that this occurred for approximately 10,684 Class Members. These data points alone allow for assessing the Settlement, particularly where the legal positions have been litigated in many other cases, allowing for reasoned judgment.

Further, "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1064. Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Plaintiffs, who have already addressed Defendant's requests for dismissal, will likely be required to counter a later motion for summary judgment and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt.

As at least one court has found, because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive

law as well as other issues." *ln re Target Corp. Customer Data Sec. Breach Litig*., No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever- developing law surrounding data breach cases"); *In re Citrix Data Breach Litig*., No. 19-61350- CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception.

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiffs strongly believe in the merits, they also understand that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiffs would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles-even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, lnc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g.*, *ln re Blackbaud, lnc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiffs dispute Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without risking not receiving any relief at all if the case continues.

#### 4. *The Settlement Treats Settlement Class Members Equitably Relative to Each Other (Fed. R. Civ. P. 23(e)(2)(D))*

The final Rule 23 factor (Rule 23(e)(2)(D)), looks at whether Settlement Class Members are treated equitably. Here, the Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible, provides Settlement Class Members with direct mail notice of the Settlement, and informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *See* Section III(B), *supra*. Every Settlement Class Member who submits a valid claim and who attests that he or she was impacted by the Data Breach is eligible to receive a credit monitoring services for up to three years, between compensation for certain Documented Losses and Lost Time of up to a combined total of $4,500.00 per Settlement Class Member. Agreement §§ IV.3.1(a), (b). The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

**5. *The Two Remaining Van Horn Factors Support Preliminary Approval.***

The remaining *Van Horn* factors also support Preliminary Approval. The factor examining the amount of opposition to the settlement will be better examined at the Final Approval stage because Settlement Class Members will have the opportunity to object after receiving notice of the Settlement. However, at this time there are no known objections from Settlement Class Members, meaning this factor currently weighs in favor of preliminary approval. Decl. ¶ 41.

The final factor, Defendant's financial condition, is effectively neutral. Defendant is a regional furniture dealer with numerous locations across several states, indicating that it is in good financial standing. *See* The Furniture Mart, "Our Story," *available at* https://www.thefurnituremart.com/ourstory/ (last viewed Dec. 9, 2025). As previously discussed, *supra*, Defendant has entered into the Agreement through arm's length negotiations facilitated by a neural mediator, indicating Defendant's ability to meet its obligation under the Agreement. Therefore, this factor is neutral. *See Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (finding this factor neutral

where defendant was "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation")).

**6. *Summary.***

Plaintiffs have established that the proposed Settlement is fair and reasonable in light of the relevant factors and attendant circumstances. The factors identified under Rule 23(e)(2) and *Van Horn* weigh strongly in favor of Preliminary Approval. Given the litigation risks involved and the complexity of the underlying issues, the Settlement is an excellent result. It could not have been achieved without full commitment from the proposed Class Representatives and Class Counsel. Accordingly, the Settlement should be preliminarily approved and notice of the Settlement should be sent to the Settlement Class.

**C. The Proposed Settlement Administrator Will Provide Adequate Notice.**

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Plan is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Exs. A–C. Defendant will provide the Claims Administrator with a list of Settlement Class Members within 7 days of Preliminary Approval. *See* Agreement § IV.7.3. Within thirty (30) days of entry of the Preliminary Approval Order, the Claims Administrator will email Short Form Notice to the Settlement Class Members to provide direct and individual notice to each Settlement Class Member. *Id.* §§ IV.7.4, 7.5, Ex. B. If an e-mail

address is unknown or undeliverable, Notice shall be sent via U.S. mail. *Id*. If any mailed Notice is returned by the Postal Service as undeliverable, the Claims Administrator shall remail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail, or, where the undeliverable mailed Notice is returned without a forwarding address, the Claims Administrator shall make reasonable efforts to ascertain the correct address of the Settlement Class Member whose Notice was returned as undeliverable and remail the Notice. *Id*. § IV.7.6.

The Settlement Administrator will receive and review claim forms, requests for exclusion and objections. Agreement §§ IV.6.3, 8.2, 9.1. Before Notice is first initiated, the Settlement Administrator will also establish and maintain a Settlement Website, that will include the Long Form Notice, Short Form Notice, Claim Form, and allow Settlement Class Members to submit Claim Forms. *ld*. §§ IV.5.5, 7.8. The Settlement Administrator will also maintain a toll-free telephone number by which Settlement Class members can communicate inquiries. *ld*. § 5.6.

In compliance with Rule 23(c)(2)(B), the Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Award for the Representative Plaintiffs and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; explaining the binding effect of a class judgment on the Settlement Class Member; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. A–C.

The notice program need not be perfect, so long as it meets the requirement of providing the best notice practicable under the circumstances with the appropriate individual notice in order to satisfy the "broad 'reasonableness' standards imposed by due process." *Hashw v. Dep't Stores*

*Nat'l Bank*, 182 F. Supp. 3d 935, 946 (D. Minn. 2016) (quoting *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1153 (8th Cir.1999)). As described above, the Notice Plan has been designed to give the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected. Accordingly, the Notice Plan should be approved. Decl. ¶¶ 42–43.

## VI. PROPOSED SCHEDULE OF EVENTS

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiffs propose the following schedule:

| l | Deadline |
|---|---|
| **Settlement Website available for viewing** | Prior to commencing Notice Program |
| **Defendant to deliver the Class Member Information to Settlement Administrator** | 7 days after Preliminary Approval Order |
| **Notice Plan Begins (Short Form Notice Sent)** | 30 days after Preliminary Approval Order (“Notice Deadline”) |
| **Deadline to File Claim Forms** | 90 days after the Notice Deadline (“Claims Deadline”) |
| **Deadline to file Motion for Final Approval and Application for Attorneys’ Fees, Costs, and Service Awards** | 14 days prior to Opt-Out Deadline |
| **Opt-Out Date** | 60 days after Notice Deadline |
| **Objection Date** | 60 days after Notice Deadline |
| **Final Approval Hearing** | **_____________, 2026, at ____ am/pm**.<br>(Preferably the week of _______, ____ or after) |

## VII. CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiffs as Class Representatives; (7) appoint Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP; and William B. Federman of Federman and Sherwood; as Class Counsel; (8) appoint Epiq as the Settlement Administrator; (9) stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendant and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

Dated: May 1, 2026 Respectfully submitted,

*/s/: Brett Waltner*
Brett Waltner
**MYERS BILLION, LLP**
Shriver Square
230 South Phillips Avenue
Suite 300
P.O. Box 1085
Sioux Falls, South Dakota 57104
Tel: (605) 336-3700
***Local Counsel for Plaintiffs and the Class***

Leigh S. Montgomery (admitted *pro hac vice*)
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931

Fax: (888) 276-3455
lmontgomery@eksm.com

William B. Federman
(admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS